IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

IRIS ÁLVAREZ,

Defendant.

CRIM. NO.: 25-521 (MEL)

**OPINION AND ORDER**

## I. INTRODUCTION

On April 6, 2026, Defendant Iris Álvarez ("Álvarez" or "Defendant") was charged via information with four counts of theft of government property under 18 U.S.C. §641. ECF No. 33. The information alleges that on four occasions she left a store at the Army and Air Force Exchange Service (the "AAFES") without rending proper payment for items she took. *Id.* Pending before the Court is Álvarez's motion to suppress evidence obtained by the government during the last of the alleged thefts on July 3, 2025. *See* Count 4 of the Superseding Information, ECF No. 33 at 3. Álvarez seeks suppression of "all physical items seized during" her allegedly unlawful detention by loss prevention offices at the AAFES as well as "all statements made" and "all investigative reports, photographs, videos and inventories arising" from the same detention. She also seeks an evidentiary hearing. For the reasons discussed in this Opinion and Order Álvarez's motion is DENIED IN PART and HELD IN ABEYANCE IN PART pending a suppression hearing.

## II. ANALYSIS

The bulk of Álvarez's suppression motion is dedicated to her arguments that she was unlawfully detained in the loss prevention office on July 3, 2025, just after the last of the alleged

thefts, and that she was subjected to custodial interrogation during that time without being given the warnings due to her under *Miranda v. Arizona*, 384 U.S. 436 (1966). Due to a lack of factual development that would allow a ruling on these issues, a hearing is set for August 7, 2026, at 9:00 am. However, some additional arguments made in the Motion to Suppress can be ruled upon without resorting to a hearing.

A small amount of context is required to explain the import of the video footage that Álvarez seeks suppressed.[1] *See e.g.* ECF No. 44-2. The alleged modus operandi of the thefts, according to the government, was for Álvarez to take two items of clothing to the dressing room. *Id.* She would then place the tag of the lower priced item on the higher priced item and exit the dressing room, leaving the lower priced item to be restocked. *Id.* Finally, she would check out, scanning the lower priced tag that was now placed on the higher priced item. *Id.* On July 3, 2025, security camera footage of the sales floor allegedly captured portions of the scheme in progress. This footage is among the evidence that Álvarez seeks suppressed.

Álvarez argues that the prosecution has withheld "potentially exculpatory evidence". ECF No. 37 at 10. First, she contests the failure of the government to provide sworn statements of a witness to the events of July 3, 2025, Pablo Rodríguez, as well as Fort Buchanan base police (other than Officer Ian Rivera) who arrived on scene after the alleged theft. However, Álvarez's argument is belied by her own admission that "there are no sworn statements from" these persons. Álvarez can hardly claim that these statements have been withheld from her when she admits that they do not exist. *See United States v. Raymundí-Hernández*, 984 F.3d 127, 162 (1st Cir. 2020) (quoting 2

---

[1] In addition to the security video of the sales floor, there is a security video of the loss prevention office, where Álvarez was brought after the incident on July 3, 2025. The admissibility of the loss prevention video substantially turns on the arguments Álvarez brings in her suppression motion not covered by this order. As such, this order expresses no opinion as to the arguments for suppression of the security camera footage when Álvarez was interviewed at the loss prevention office.

Fed. Prac. & Proc. Crim. § 256 (4th ed.)). ("[E]xculpatory evidence must exist at the time of trial to qualify as *Brady* material."). Defendant cites no authority for the proposition that the prosecution's failure to obtain sworn statements (as opposed to their failure to turn over exculpatory statements in their possession) constitutes withholding exculpatory evidence. Álvarez does not even provide an explanation of what exculpatory material she anticipates such statements would provide if they existed. Therefore, her request for any suppression of evidence on this basis is denied.[2]

Álvarez also argues that evidence should be suppressed because there is "a one hundred forty-seven (147) day gap where the location, control, and integrity of the shirts and tags, allegedly occupied as physical evidence, as well as the CCTV videos, went entirely undocumented." ECF No 37 at 9. Additionally, she attests that required evidence tags are missing from the items. *Id.* According to Álvarez, these facts fatally compromise the evidence and warrant suppression.

All evidence must be authenticated before it can be admitted at trial. *United States v. Luna*, 649 F.3d 91, 103 (1st Cir. 2011); *United States v. Barrow*, 448 F.3d 37, 42 (1st Cir. 2006). *See also United States v. Savarese*, 686 F.3d 1, 11 (1st Cir. 2012) ("[T]he standard for authentication, and hence for admissibility, is one of reasonable likelihood."). As Álvarez correctly notes, authentication requires that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901. "[T]he burden of authentication does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Espinal-Almeida*, 699 F.3d 588, 609 (1st Cir. 2012). "Moreover, there is no single or

---

[2] This finding should not be construed as relieving the government of its burden to produce any exculpatory evidence in its possession as required by *Brady v. Maryland*, 373 U.S. 83 (1963). It merely confirms that the government has no positive duty to create sworn statements of witnesses where none exist.

exclusive manner to authenticate evidence, as a specific piece of evidence 'is properly admitted if it is readily identifiable by a unique feature or other identifying mark.'" *United States v. Rosado-Cancel*, No. 13-0731(DRD), 2015 U.S. Dist. LEXIS 57767 (D.P.R. May 1, 2015) (quoting *United States v. Luna*, 649 F.3d 91, 103 (1st Cir.2011)). The use of the testimonial tracing of chain of custody is one manner in which evidence is authenticated. When no unique or identifying feature of the item is present "or if the evidence is susceptible to alteration, 'a testimonial tracing of the chain of custody' is needed." *Espinal-Almeida*, 699 F.3d 588 at 609 (1st Cir. 2012) (quoting *Luna*, 649 F.3d at 103).

Here, the items at issue, shirts and their sales tags, as well as the CCTV footage, are all distinct objects. These items are not like drugs which, having few distinctive features, may be easily confused for different objects of the same type or even for different items entirely. Álvarez has not pointed out any particular information about the items that would suggest that they cannot be identified through unique features elicited via witness testimony. Nor has she alleged that any alteration of the items has taken place. Furthermore, "even though there may be gaps in the chain of custody for a certain piece of evidence, such gaps factor into the weight given to the evidence rather than its admissibility." *United States v. Abreu*, 952 F.2d 1458, 1467 (1st Cir. 1992). Thus, even if chain of custody cannot be established perfectly, that does not alone mean that the evidence cannot be authenticated. Defendant is free to argue during trial that the government has failed to authenticate a piece of evidence to the standard of reasonable likelihood after authentication has been attempted.

Additionally, it is not necessary to hold a hearing on Álvarez's grievances regarding the security camera footage of the AAFES shopping floor. Álvarez presents multiple arguments for

suppression of this video evidence each of which fail, even when taking Álvarez's factual assertions as true.

First, Álvarez argues that the government failed to preserve "critical video footage of Mrs. Álvarez exiting the dressing room." ECF No. 37 at 10. When this footage was requested from the government, Defendant was informed that "this footage was not saved". *Id.* at 11. The government admits that this footage was not preserved. ECF No 39 at 17. However, Álvarez conflates the test for evidence that was not preserved, which is under the auspices of *Arizona v. Youngblood*, 488 U.S. 51 (1988) and *California v. Trombetta*, 467 U.S. 479 (1984) with that for extant evidence that was not produced under *Brady* 373 U.S. 83 (1963). *See Femia* 9 F.3d at 993. ("The Supreme Court's jurisprudence divides cases involving nondisclosure of evidence into two distinct universes. *Brady* and its progeny address exculpatory evidence that is still in the government's possession. *Youngblood* and *Trombetta* govern cases in which the government no longer possesses the disputed evidence."). As the footage is not in the possession of the government, Defendant's arguments will be examined under the lens of *Youngblood* and *Trombetta.*

"Materiality is central to the *Trombetta-Youngblood* inquiry: '(1) the destruction of "apparently exculpatory" evidence does not require a showing of bad faith but (2) if the evidence is only "potentially useful," a bad-faith showing is required.'" *United States v. De La Cruz*, 556 F. Supp. 3d 56, 60 (D.P.R. 2021) (quoting *Olszewski v. Spencer*, 466 F.3d 47, 56-57 (1st Cir. 2006)). Apparently exculpatory evidence is that which is exculpatory on its face, meanwhile potentially useful evidence is that which may, after some analysis, have held some exculpatory value. *See Youngblood*, 488 U.S. at 57 (holding that evidence is merely potentially useful when "no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant."). In either case, [t]he defendants must also demonstrate that the destroyed evidence

"is to some extent irreplaceable." *Id.* (quoting *United States v. Dumas*, 207 F.3d 11, 15 (1st Cir. 2000)). Defense counsel alludes to "*potentially* exculpatory evidence", not apparently exculpatory evidence and hence, she would have to make a showing of bad faith. However, she makes no effort to allege bad faith on the part of the government. *See* ECF No. 37 at 10-11 (emphasis added).

Nor does Álvarez's explanation as to why the evidence would have been exculpatory pass muster. She argues that since the sworn statement of Juliana Lee Nieves, an employee at the AAFES, inconsistently states in her sworn statement that Álvarez switched the tags of two shirts both inside and outside of the dressing room, the footage would be exculpatory. ECF No. 37 at 10. *See* also ECF No. 44-2 at 1. There are three possible scenarios as to what the missing footage could show; none are exculpatory. First, the footage could show Álvarez walking out of the dressing room without a tag visible on the higher priced item that she allegedly took to the cash register. This would not tend to show either that she did or did not change the tag with that of the lower priced item, since the tag cannot be seen. The second option is that the tag on the higher priced item as she exited the dressing room is not the tag that was eventually scanned at the checkout and rung as the lower priced item. *See* ECF No. 39-8, 9, 10. This version of the video recording would actually inculpate Álvarez, since it would demonstrate that the tag on the higher priced item was at some point changed before she got to the checkout, albeit after her time in the changing room. Finally, the video recording could show that the tag on the higher priced item was already the tag that rang at checkout as the lower priced item. This could support a theory that Álvarez did not change the tags and instead that the higher priced item had been mislabeled by staff or the tag swapped by a third party. However, it is equally consistent with the government's theory of the case in which Álvarez herself changed the tags in the dressing room. *See De La Cruz*, 556 F. Supp. 3d at 61 (finding destroyed evidence that may have corroborated the defendant's theory of the case

6

to be of "tenuous" materiality). *See also Strickler v. Greene*, 527 U.S. 263, 280 (1999) (holding that "evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"). In no case does the footage of Álvarez exiting the dressing room exculpate her. At best, it would show that she did not change the tag in the dressing room. This version of the video recording would cast some doubt on the government's version of events. However, merely disproving a portion of the government's version of events is not exculpatory if it has the effect of showing that the Defendant committed the crime in a different manner, such as changing the tags after exiting the dressing room. "[T]he Government's duty to disclose exculpatory evidence is aimed at material concerning guilt or punishment" *Esquilin-Montañez*, 268 F. Supp. 3d at 316. Here, a video recording discrediting a portion of the government's case theory by showing that the tag was not changed in the dressing room is not material to exculpate Álvarez, since it would still be consistent with the tag being changed while the items were in Álvarez's possession.[3]

Furthermore, the evidence is not irreplaceable. Evidence is somewhat irreplaceable when it is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means" and if it left Defendant "without alternate means of demonstrating their innocence." *Trombetta*, 467 U.S. at 489, 490**.** Álvarez herself is aware of what took place as she exited the dressing room and can so testify if she chooses to. Therefore, the evidence is not "to some extent irreplaceable". *United States v. Esquilin-Montañez*, 268 F. Supp. 3d 314, 317 (D.P.R. 2017) (holding that when the missing information could be supplied by Defendant's own

---

[3] The government also proffers, though not explicitly, that the correct price tag of the item Defendant took to checkout was found in the pocket of a jacket that Defendant was see handling. It is uncontested that the footage at issue shows Defendant handling this jacket. Therefore, in the end, it does not matter whether the price tags of the two shirts were altered before, during or after Defendant's entrance to the dressing room.

testimony, the destroyed evidence was not irreplaceable within the meaning of *Trombetta*). Additionally, the sworn statement of Officer Ian Rivera confirms that he saw the footage prior to its erasure. *See* ECF No. 39-28 at 1. Hence, he can also testify to the contents of the erased video.

Álvarez next contends that suppression of the security camera footage is warranted because the camera "failed to record" potentially exculpatory evidence that may have occurred out of frame of the camera. This argument likewise fails. As mentioned, such cases do not fall under the ambit of failure to preserve evidence because the evidence was never created in the first place. *See Raymundí-Hernández*, 984 F.3d at 162 (citing *United States v. Jones*, 399 F.3d 640, 647 (6th Cir. 2005)). Defendant cites no authority for the proposition that the failure for the AAFES employees to create evidence that potentially had exculpatory value requires suppression of the evidence that was created. Indeed, this concern more properly goes to the weight that a factfinder might give the available evidence.

Finally, Álvarez briefly argues that "available video footage shows an AAFES employee manipulating the sweater's pockets where the 'missing tag' of the higher priced item of clothing was found, moving off camera, returning to the sweater, removing a tag, and laughing toward the camera." ECF No. 37 at 11. According to her, this "destroys the integrity of the physical evidence the government seeks to introduce". *Id.* However, these concerns once again go to the weight a factfinder gives the evidence, not whether it should be suppressed. Defendant will have ample opportunity to attack the credibility of this evidence at trial.

For the reasons discussed above, Álvarez's request to suppress the sales floor video recording from July 3, 2025, on the basis that the government failed to preserve critical footage, that the security camera failed to record exculpatory evidence and on the basis of the actions of

AAFES employees regarding the "missing tag" is DENIED. Furthermore, to the extent Defendant seeks suppression of any evidence on the ground that the government failed to obtain sworn statements from witnesses, such relief is also DENIED. Finally, Defendant's request to suppress evidence because of chain of custody failures is DENIED. As for the other issues brought forward by the motion to suppress, including the claims of unlawful detention, the alleged failure to Mirandize the Defendant during her time in the loss prevention office and Álvarez's other arguments regarding suppression of physical evidence, they are HELD IN ABEYANCE pending the suppression hearing. Said evidentiary hearing is scheduled for August 7, 2026, at 9:00 am.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of July 2026.

s/Marcos E. López
U.S. Magistrate Judge

9